UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TAHRA KERMAN-MASTOUR,

                               Plaintiff,

          v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC., AND FINRA REGULATION, INC.,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Docket No.: 10-CV-1633
(RJH)(RLE)


# DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., AND FINRA REGULATION, INC.'S MEMORANDUM OF LAW <u>IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>


*Oral Argument is Requested*

Dated:  New York, New York
       April 1, 2011

*Of Counsel:*

      Peter A. Walker
      Hema Chatlani

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................2

    A.   Plaintiff's Performance Was Abysmal...........................................................2

    B.   Plaintiff has not Presented Any Evidence Giving Rise to an Inference of Discrimination ...................................................................................3

    C.   Plaintiff's Excuses do not Salvage her Poor Performance...........................4

    D.   Plaintiff's Self-Serving Affidavit Does Not Create a Fact Issue ................5

    E.   This Court Should Not Second-Guess FINRA's Legitimate Business Decisions...................................................................................6

    F.   Plaintiff's Remaining Assertions Do Not Establish Pretext .......................7

    G.   Plaintiff's Claims of Retaliation Should Also Be Dismissed .....................9

CONCLUSION.............................................................................................................10

13272019v.1

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bar-Tur v. Arience Capital Mgmt., L.P.*,
  09-CV-2653, 2011 U.S. Dist. LEXIS 14114 (S.D.N.Y. Feb. 9, 2011)....................................10

*Benn v. City of N.Y.*,
  07-CV-0326, 2011 U.S. Dist. LEXIS 22226 (E.D.N.Y. Feb. 28, 2011) ..................................2

*Bickerstaff v. Vassar College*,
  196 F.3d 435 (2d Cir. 1999)....................................................................................................5

*Chow v. Stride Rite Corp.*,
  05-CV-2417, 2009 U.S. Dist. LEXIS 5632 (S.D.N.Y. Jan. 27, 2009) ....................................9

*Gomes v. NYNEX*,
  94-CV-1770, 1999 U.S. Dist. LEXIS 12993 (S.D.N.Y. Aug. 23, 1999)..................................9

*Howley v. Tn of Stratford*,
  217 F.3d 141 (2d Cir. 2000)....................................................................................................4

*Hunter v. St. Francis Hosp.*,
  281 F. Supp. 2d 534 (E.D.N.Y. 2003) ....................................................................................5

*Jensen v. Garlock, Inc.*,
  4 F. Supp. 2d 219 (W.D.N.Y. 1998) ........................................................................................3

*Kaur v. N.Y.C. Health & Hosps. Corp.*,
  688 F. Supp. 2d 317 (S.D.N.Y. 2010)......................................................................................7

*Lawrence v. State Univ. of N.Y.*,
  01-CV-7395, 2002 U.S. Dist. LEXIS 23916 (S.D.N.Y. Dec. 11, 2002) ..................................5

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)................................................................................................................6

*McPherson v. N.Y.C. Dep't of Educ.*,
  457 F.3d 211 (2d Cir. 2006)....................................................................................................6

*Phipps v. Comprehensive Cmty. Dev. Corp.*,
  00-CV-6063, 2005 U.S. Dist. LEXIS 1672 (S.D.N.Y. Feb. 2, 2005) (Holwell, J.).................7

*Taylor v. Polygram Records*,
  94-CV-7689, 1999 U.S. Dist. LEXIS 2583 (S.D.N.Y. Mar. 5, 1999) ......................................5

13272019v.1

*Taylor v. Potter*,
   99-CV-4941, 2004 U.S. Dist. LEXIS 15992 (S.D.N.Y. Aug. 16, 2004)...................................4

*Tomassi v. Insignia Fin. Group, Inc.*,
   478 F.3d 111 (2d Cir. 2007)...........................................................................................................7

*United Magazine Co. v. Murdoch Magazines Distrib.*,
   393 F. Supp. 2d 199 (S.D.N.Y. 2005)..........................................................................................6

*Winnie v. City of Buffalo*,
   00-CV-0128, 2003 U.S. Dist. LEXIS 1497 (W.D.N.Y. Jan. 13, 2003)....................................8

13272019v.1

Defendants the Financial Industry Regulatory Authority, Inc., ("FINRA") and FINRA Regulation (collectively referred to as "FINRA" or "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment.

## PRELIMINARY STATEMENT

In her Complaint, Plaintiff Tahra Kerman-Mastour claims that FINRA terminated her employment because of gender and religious discrimination and retaliation in violation of the New York City Administrative Code ("NYC Code"). Plaintiff has now been required to defend her allegations by pointing to specific *admissible* evidence; however, despite the passage of nearly a year of discovery, Plaintiff has not done so, and instead relies on the same unsupported allegations of her Complaint, which she unsuccessfully attempts to bolster with her own self-serving Affidavit.[1]

Remarkably, Plaintiff makes excuses for each of her performance deficiencies, by citing primarily to her own Affidavit. According to Plaintiff, her performance was *always* satisfactory, and the detailed record - which includes two negative performance evaluations (spanning two calendar years), months of meetings and notes wherein Plaintiff repeatedly reported no progress on her cases, detailed feedback on her memoranda by both Richard Chin and Susan Light, *two* performance improvement plans ("PIPs"), and an independent assessment by Scott Anderson[2] - is simply a paper

---

[1]     In her Affidavit, Plaintiff first accuses Light, a Jewish mother, of harboring *gender* bias in 2005 when she recommended against promoting Plaintiff, then accuses Chin of gender *and* religious bias after he gave her negative performance evaluations, and finally alleges a grand conspiracy in which both Chin and Light acted as dual malefactors because of their alleged animus toward Jewish mothers. Plaintiff goes as far as to allege that Chin and Light also looped FINRA's Human Resources Department into the conspiracy (Kerman-Mastour Aff. ¶¶ 10, 71), and then somehow tainted both Scott Anderson and Susan Merrill. Plaintiff's shifting and ever-increasing circle of discriminators only highlights the extent to which her claims are premised on speculation rather than facts. In sum, Plaintiff has not adduced any admissible evidence of such conspiracy because none existed.

[2]     Plaintiff incorrectly states in her opposition brief that the only record of Anderson's criticisms is in his Declaration in support of FINRA's motion for summary judgment. While Anderson's Declaration alone suffices as admissible evidence of his evaluation and opinion of Plaintiff's work, FINRA also submitted Anderson's handwritten comments on Plaintiff's Draft Sufficiency of the Evidence Memorandum in the GP matter, wherein Anderson notes, among other things, that Plaintiff

trail concocted by Chin to hide his discriminatory animus. (Pl.'s Opp. Br. at 16; Pl.'s Aff. ¶¶ 4, 8; Pl.'s 56.1 ¶ 93.) Plaintiff's far-fetched argument is not only illogical, but is also completely unsupported by the record. Notably, Plaintiff's only support for her allegations, as shown herein, are suppositions, speculation, hearsay, and self-serving statements illustrated by the following: "Kerman **_believes_** that the Performance Plan was just another action taken against her . . . to create a paper trail which would portray Kerman as a poor performer." (Pl.'s 56.1 ¶ 93.) (emphasis added). Summary judgment is not about what Plaintiff "believes"; it is about admissible evidence to create a genuine issue of material fact.

Here, although Plaintiff had the opportunity to engage in a year of exhaustive discovery, Plaintiff has not adduced _any_ admissible evidence of any conspiracy against Jewish Mothers. Simply put, Plaintiff cannot avoid summary judgment by regurgitating the conclusory and unsupported allegations of her Complaint and by contradicting her own deposition testimony.

## ARGUMENT

### A.     Plaintiff's Performance Was Abysmal

Plaintiff has failed to present any admissible evidence creating an issue of fact on her discrimination claims - regardless of whether they are based on her gender, religion, or some combination thereof.

Plaintiff repeatedly alleges in her opposition papers that she need only show that she possessed the basic skills necessary for the performance of her job to establish satisfactory performance.[3] Here,

---

missed a pattern and lacked an understanding of the threshold of proof required to charge a registered representative. (Anderson Decl. ¶15; Anderson Decl., Ex. A.)

[3]     Plaintiff claims in her opposition brief that FINRA mistakenly relies on her supervisor's evaluations to determine whether Plaintiff's job performance was satisfactory. However, the Court cannot review Plaintiff's performance in a vacuum; it must review her performance against the specific expectations of her employer. _Benn v. City of N.Y._, 07-CV-326, 2011 U.S. Dist. LEXIS 22226, at *16 (E.D.N.Y. Feb. 28, 2011) ("Whether [plaintiff's] job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge.").

as the evidence establishes, Plaintiff did not exhibit on her actual work even the most *basic* skills required for her position. Plaintiff failed to make progress on her cases, was delinquent with her STAR entries,[4] lacked on-the-record interview skills, missed critical facts, arrived at inaccurate legal conclusions, and produced memoranda that demonstrated her lack of understanding of the level of proof required to prosecute cases on behalf of FINRA.  (*See* Defs.'s Mem. of Law at 9-13.)  The fact that FINRA continued to employ Plaintiff for several years as a more junior attorney even though she was not progressing to more complicated work does not, as Plaintiff claims, establish that she possessed the skills required by FINRA as a more senior Enforcement attorney.  *See Jensen v. Garlock,* Inc., 4 F. Supp. 2d 219, 223 (W.D.N.Y. 1998) ("[F]or some employees, performance that is deemed adequate for a long period of time can become inadequate . . . following a shift in job responsibilities.").

### B.   Plaintiff has not Presented Any Evidence Giving Rise to an Inference of Discrimination

In a failed effort to establish an inference of discrimination, Plaintiff cites almost entirely to her own self-serving Affidavit to manufacture discriminatory comments.  However, other than her own assertions, there is no evidence in the record that Chin or Light made *any* discriminatory comments to Plaintiff; indeed, the fabrication of Plaintiff's claims becomes even more evident given that Plaintiff persists in her allegation that Elovic told her that Light commented to Elovic that

---

[4]     Although Plaintiff claims that she had technical difficulties that prevented her from submitting her STAR entries on time, as the record makes clear, Plaintiff's STAR entities were delinquent not for a day or two, which might be explained by computer difficulties, but for *months* at a time.  (Defs.'s 56.1 ¶¶ 40-46.)  There is no evidence that these belated "technical difficulties" prevented any other staff lawyer from updating STAR entries. Additionally, Plaintiff did not explain why her STAR comments were nearly identical for several months, indicating that she had not made any progress on her cases.  (Defs.'s 56.1 ¶¶ 42.)

13272019v.1

Plaintiff would be happier at home,[5] *despite the fact that Elovic already testified that she never told Plaintiff this.* [6]   (Walker Supp. Decl., Ex. A.)

Nor has Plaintiff offered any admissible evidence refuting the inference *against* discrimination that exists where the decision-maker, and several employees retained by the Company, are members of the same protected category.  Here, Merrill - the decision-maker- is a *Jewish mother.*  Moreover, the four top supervisors in the New York office are *all* Jewish females.  While Plaintiff attempts to distinguish herself by alleging that she is more observant and has young children, she cannot refute the fact that Elovic, who holds one of the highest positions in the New York office, is an observant Jew, or that FINRA employs several staff attorneys who are mothers of young children, including Josefina Martinez, who reports successfully to Chin and is a single mother of an elementary-school-aged child.  (Defs.' 56.1 ¶¶ 149-154.)

**C.    Plaintiff's Excuses do not Salvage her Poor Performance**

Plaintiff does not present any evidence refuting FINRA's legitimate basis for terminating Plaintiff's employment after she repeatedly failed to make progress on her cases, submitted poor quality work product, and did not meet the terms of her *two* PIPs. Instead, Plaintiff attempts to explain her lack of progress by claiming that Chin set her priorities and that she was too busy "spending the

---

[5]    Notwithstanding Plaintiff's cursory argument to the contrary, Plaintiff's comments regarding what Elovic told her are inadmissible hearsay.  *See Howley v. Tn of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (Testimony by plaintiff "that other firefighters told her of certain statements by [her supervisor]" were inadmissible to prove that her supervisor "actually made such statements, for her testimony offered for that purpose would be hearsay."); *Taylor v. Potter*, 99-CV-4941, 2004 U.S. Dist. LEXIS 15992, at *57 (S.D.N.Y. Aug. 16, 2004) ("Taylor's testimony about what other employees allegedly told him is inadmissible hearsay.").

[6]    Elovic not only testified that she *never* told Plaintiff that Light made such a comment, but also added, "I don't remember Sue saying anything like that.  Sue was not happy about how the whole thing panned out.  She was certainly not gleeful when she reported to us that Tahra had been let go. She was upset about it.  I just don't think she would have said something like that."  (Walker Reply Decl., Ex. A.)

majority of her time on the Reynolds litigation."[7] (Pl.'s 56.1 ¶¶ 42, 52-56, 70-71.)  However, "faulting others for or otherwise rationalizing problems legitimately perceived by one's employer does not establish discriminatory animus."  *Lawrence v. State Univ. of N.Y.*, 01-CV-7395, 2002 U.S. Dist. LEXIS 23916, at *16 (S.D.N.Y. Dec. 11, 2002); *see also Taylor v. Polygram Records*, 94-CV-7689, 1999 U.S. Dist. LEXIS 2583, at *27 (S.D.N.Y. Mar. 5, 1999) ("The evidence, even if viewed most favorably to Plaintiff, merely serves to shift the blame for, or rationalize, these incidents to show that the criticism was undeserved[,]" and does not establish pretext.).  Moreover, Plaintiff was removed from the Reynolds litigation after only a short time because of this very reason - Plaintiff's "***lack of progress on her other investigations.***" (Defs.' 56.1 ¶ 35.) (emphasis added).  The fact remains that Plaintiff cannot dispute the record of deficiencies noted in her performance reviews, PIPs, and the detailed comments on Plaintiff's work product, regardless of whether she *believed* her performance was satisfactory.  *See Hunter v. St. Francis Hosp.,* 281 F. Supp. 2d 534, 544 (E.D.N.Y. 2003).

### D.     Plaintiff's Self-Serving Affidavit Does Not Create a Fact Issue

Plaintiff attempts unsuccessfully to create an issue of fact by citing to her extraordinarily long 181-paragraph Affidavit, in which she insists that her performance was satisfactory and that Chin created a paper trail to mask his discriminatory intent.  This Affidavit simply reiterates the allegations in Plaintiff's Complaint and makes sweeping conclusions without actual evidentiary support.  Tellingly, despite FINRA's heavy reliance on Plaintiff's deposition testimony in support of its motion for summary judgment, Plaintiff cites to only a small portion of her own testimony in her Affidavit, and instead attempts to start fresh with detailed paragraphs inundated with legal conclusions and hearsay, which simply cannot withstand summary judgment.  *See Bickerstaff v. Vassar College*, 196

---

[7]     In addition to citing to the Reynolds litigation, Plaintiff claims that she did not complete the tasks on the various "to do" lists created for her because Chin told her "other cases should take priority." (Pl.'s 56.1 ¶¶ 42, 52-56, 70-71.)  However, Plaintiff never once mentions exactly *which* cases Chin allegedly told her took priority.

5

F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *see also United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005) ("self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment.") (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-90 (1990)).

**E.      This Court Should Not Second-Guess FINRA's Legitimate Business Decisions**

Plaintiff cannot create an issue of fact by alleging that Elovic thought highly of her performance because this allegation is not supported by the record and is completely irrelevant.  As Elovic's deposition testimony reveals, Elovic never told Plaintiff that her work was "90% better" than the employees Elovic supervised, as Plaintiff now claims, and in fact testified that Plaintiff's work was "elementary for somebody at her level."   (Defs.' 56.1 ¶107; Walker Supp. Decl., Ex. A.) Moreover, Elovic admitted that she was not familiar with the facts of the cases Plaintiff worked on and did not review Plaintiff's files, and therefore was not capable of identifying the factual and legal inaccuracies in Plaintiff's memoranda.  (Defs.' 56.1 ¶106.)  In any event, Elovic did not supervise Plaintiff, as Light and Chin did, and therefore her opinion of Plaintiff's work had no bearing on FINRA's decision to terminate Plaintiff's employment for inadequate performance.  Plaintiff cannot now ask the Court to sit as a super personnel department and assess the merits or rationality of FINRA's legitimate business decision.[8]  *See McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what 'motivated the employer.'") (citation omitted).

---

[8]       Similarly, Plaintiff attempts to establish pretext by arguing that FINRA's business decision was suspect because it did not have the resources to replace Plaintiff's employment.  (Pl.'s Aff. ¶¶ 142.)  However, Plaintiff cannot ask the Court to second-guess FINRA's decision to terminate her employment during a hiring freeze and have one less employee rather than retain an inadequate performer.

**F.     Plaintiff's Remaining Assertions Do Not Establish Pretext**

Plaintiff makes a number of arguments in a failed effort to establish pretext.  Each of Plaintiff's arguments, and the evidence in the record that refutes it, is set forth below.

• **Chin allegedly uttered discriminatory comments** (Pl.'s Opp. at 15.):   FINRA absolutely denies that Chin made any discriminatory comments.  (Defs.'s 56.1 ¶¶ 127-128; 137.) However, even if this were true, Plaintiff nonetheless cannot establish an inference of discrimination. It is well established that "stray remarks generally directed towards a minority group may not, without more, defeat summary judgment. . . .  Indeed, if a supervisor's racially derogatory comments were enough to force a discrimination suit to a jury, disparaged workers who had the 'fortuity' of being in the class encompassed by the stray remark would have an instantaneous jury case on discrimination, regardless of the ground for their dismissal."  *Phipps v. Comprehensive Cmty. Dev. Corp.*, 00-CV-6063, 2005 U.S. Dist. LEXIS 1672, at *56-57 (S.D.N.Y. Feb. 2, 2005) (Holwell, J.) (citation omitted).

Moreover, the factual record established by FINRA clearly establishes that Merrill, and not Chin, made the decision to terminate Plaintiff's employment.  Thus, Plaintiff cannot rely on Chin's alleged comments to establish pretext.  *See Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 334 (S.D.N.Y. 2010) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.") (quoting *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007)).

• **Plaintiff met the terms of her performance plan and was not provided with any documentation stating otherwise** (Pl.'s Opp. at 16-18.):  Plaintiff's claim that she did not receive any documentation is preposterous given the fact that her 2008 Performance Review states, in no uncertain terms, "Tahra has not met all of the goals of the performance plan."  (Defs.' 56.1 ¶36.) Likewise, her allegation that she met the terms of the PIPs is refuted by the volumes of documentary evidence, which establishes that Plaintiff continued to submit untimely and subpar work product.

7

(Defs.' 56.1 ¶¶ 34-79, 91-104.)   Plaintiff cannot circumvent the fact that she missed deadlines established by the PIPs by claiming that she was only required to submit first drafts of her work, as opposed to final drafts.  Both PIPs clearly state that Plaintiff must submit her memoranda for **"final approval,"** and not an initial review, by certain set dates.  (Defs.' 56.1 ¶¶ 94, 100.) (emphasis added).

- **FINRA relies "solely on the subjective opinions of the perpetrators of the discrimination" in establishing Plaintiff's poor performance** (Pl.'s Opp. at 17.):   Plaintiff completely ignores FINRA's record before this Court.  FINRA terminated Plaintiff's employment after two negative performance evaluations by Chin and Light, several meetings with Plaintiff where Plaintiff repeatedly reported no progress on her cases, years of detailed feedback on her work product, *two* PIPs, Andersen's independent assessment that Plaintiff made errors in her legal memoranda, and Merrill's own determination that Plaintiff was a liability to FINRA.

- **Anderson's review was not independent** (Pl.'s Opp 18-19.):  Plaintiff alleges that Chin and Light influenced Anderson's independent assessment, citing only to her Affidavit.  However, Plaintiff has absolutely no *personal* knowledge of Anderson's assessment and cannot use her unfounded allegations to refute Anderson's own testimony that neither "Chin nor Light influenced [his] assessment of [Plaintiff's] work," (Anderson Decl. ¶ 11.)   *Winnie v. City of Buffalo*, 00-CV-0128, 2003 U.S. Dist. LEXIS 1497, at *21, n. 16 (W.D.N.Y. Jan. 13, 2003) (granting summary judgment where plaintiff's only offer of proof came from his own affidavit because "[s]uch a conclusory allegation is not enough to defeat summary judgment.").

- **FINRA presents conflicting testimony regarding who made the decision to terminate Plaintiff, thus establishing pretext** (Pl.'s Opp at 19-21.):  The record is clear that *Merrill* decided to terminate Plaintiff's employment, after considering Plaintiff's negative performance reviews, her failure to meet the terms of her PIPs, and Anderson's independent assessment of Plaintiff's work. (Merril Decl., ¶¶ 4-12.)  Plaintiff cannot create an issue of fact by speculating that Chin and Light

improperly influenced Merrill's decision.  *See Chow v. Stride Rite Corp.*, 05-CV-2417, 2009 U.S. Dist. LEXIS 5632, at*23 n. 6 (S.D.N.Y. Jan. 27, 2009).

In sum, FINRA has met its burden of showing that Plaintiff was terminated for her inadequate performance, and Plaintiff cannot overcome summary judgment with her speculation that Chin fabricated a "paper trail" to terminate her for discriminatory reasons.  *See Gomes v. NYNEX,* 94-CV-1770, 1999 U.S. Dist. LEXIS 12993, at *20 (S.D.N.Y. Aug. 23, 1999) (granting summary judgment and rejecting plaintiff's claim that "her repeated poor performance reviews were merely a 'paper trail' to manufacture a valid reason for her termination" given the well-documented record of plaintiff's poor performance).

### G.    Plaintiff's Claims of Retaliation Should Also Be Dismissed

Plaintiff concedes in her opposition papers that Chin, Light, and Merrill were unaware of her complaints to the Office of Ombudsman.  (Pl.'s 56.1 ¶¶ 121-123.)  Thus, her retaliation claim consists solely of her participation in the committee of employees who voiced their opinion regarding FINRA's maternity leave policy, her e-mails to Mary Schapiro expressing her concerns regarding the policy, and her March 3, 2009, memorandum to Light - an alleged protected activity that Plaintiff omitted from her Complaint.

With respect to her participation in the maternity leave committee, Plaintiff has not presented any evidence, other than her own speculative assertions, that Chin knew about the purpose and goals of the committee or that he was hostile to such goals.  As for Light, although Plaintiff now alleges that Light negatively considered her involvement in the committee, this contradicts Plaintiff's deposition testimony, wherein Plaintiff testified, after being asked whether she had any reason to believe that Light retaliated against her for participating in the committee, "I don't have any knowledge of her involvement, but I have not - - I don't know."  (Defs.' 56.1 ¶ 146.)

In any event, Plaintiff has presented absolutely *no* evidence that her participation in the maternity leave group led to her termination, other than the temporal proximity between her

participation in the committee and her first PIP.  The case law in this Circuit is clear that "temporal proximity is not sufficient to support a retaliation claim without more."  *Bar-Tur v. Arience Capital Mgmt., L.P.,* 09-CV-2653, 2011 U.S. Dist. LEXIS 14114, at *30 (S.D.N.Y. Feb. 9, 2011) (citation omitted).  In addition, Plaintiff ignores that her performance had been criticized for years prior to her participation in this committee.

As for her March 3, 2009, memo, the record is clear that Chin and Light had severely criticized Plaintiff's poor performance *well* before this date, indeed placing her on *two* PIPs prior to receiving this memorandum, rendering Plaintiff's allegation of retaliation for writing this memorandum absurd. (Defs.' 56.1 ¶¶ 7-9, 34 -36, 41-44, 48-64, 68-77, 81- 82, 84-89, 91-103.)[9]

With respect to her e-mails to Mary Shapiro, although Plaintiff asserts that a jury could find that her placement on a PIP was retaliatory given that it occurred one month after her September 2008 e-mail to Shapiro (Pl.'s Opp. Br. at 25), Plaintiff has presented absolutely *no evidence* refuting Chin, Light, and Merrill's sworn statements that they were unaware of Plaintiff's e-mail.  (Defs.' 56.1¶ 33; Pl.'s 56.1 ¶33.)

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court grant summary judgment to FINRA and dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: New York
       April 1, 2011

                                        Respectfully submitted,

                                        SEYFARTH SHAW LLP

                                        /s/ Peter A. Walker
                                        Peter A. Walker
                                        Hema Chatlani
                                        620 Eighth Avenue, 32nd Floor
                                        New York 10018
                                        (212) 218-5500

---

[9]      Further, no reasonable juror would attribute Plaintiff's termination to this memorandum, as opposed to the detailed documentation of her poor performance.

13272019v.1